UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BITKERN HPC GMBH, | |
| *Plaintiff*, | Civil Case No. |
| v. | ECF CASE |
| DYNAMICS LLC, a/k/a DYNAMICS MINING LLC, | COMPLAINT |
| *Defendant*. | |

Plaintiff Bitkern HPC GmbH ("Plaintiff" or "Bitkern"), by and through its attorneys Colella Zefutie LLC and Carmody Torrance Sandak & Hennessey LLP, as and for its Complaint against Defendant Dynamics LLC, a/k/a Dynamics Mining LLC ("Defendant" or "Dynamics") alleges and states as follows:

## THE PARTIES

1. Plaintiff is Swiss-based entity with its principal place of business located at Gotthardstrasse 26, 6300 Zug, Switzerland. Plaintiff is in the business of blockchain technology and artificial intelligence that focuses on, among other things, the mining of cryptocurrencies. Generally speaking, "mining" requires using sophisticated and often costly hardware that runs continuously and solves complex mathematical problems. Once that hardware "solves" a mathematical problem, it receives a block reward. On the bitcoin blockchain, these rewards consist of newly distributed bitcoins including transaction fees. The process then repeats itself and more bitcoins are acquired.

2. Upon information and belief, Defendant is a limited liability company organized under the laws of the State of Maine (Charter No. 20226481DC) and maintains its principal place

{W3492476}

of business at 148 Orion Street, Brunswick, Maine 04011. Upon information and belief, Defendant also maintains a place of business at 777 Main Street, Lewiston, Maine 04240. Defendant claims it provides 100% renewable energy mining facilities.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Bitkern is a citizen of Switzerland and Defendant is a citizen Maine, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant because Defendant is formed under the laws of the State of Maine and is registered to do business in the State of Maine. Thus, Defendant is "at home" in Maine.

5. Venue is proper in this case pursuant to 28 U.S.C. § 1391 because Defendant is a citizen of Maine and, upon information and belief, maintains a principal place of business in Maine. In addition, all agreements alleged herein originated in this District.

## FACTS PERTINENT TO ALL COUNTS

6. In the summer of 2022 and continuing into the winter of that same year, Bitkern entered into various agreements with Defendant for servicing and hosting of mining hardware in Defendant's building(s) (the "Facility" or "Facilities"). As stated above, that mining hardware is essential to Bitkern's business.

7. Those Agreements are dated August 2, 2022, September 1, 2022, and December 9, 2022. Each Agreement contained general terms outlining the parties' respective obligations, and they also included "Service Orders" that specified the sort of hardware and the cost of hosting that hardware. The Agreements and Service Orders are collectively referred to herein as the "Agreements."

8. The general terms of the Agreements obligated Defendant to provide certain services to Bitkern which included, among other things, (i) acceptance, inspection, and set-up of Bitkern's hardware; (ii) security; (iii) network connectivity; (iv) power; and (v) maintenance and support.

9. More specifically, each of the Agreements provided, in relevant part, that Defendant was "responsible for the installation and configuration of Customer Hardware [that is, Bitkern's hardware] at the Facility and will do all such other things as are necessary to render the Facility fully operational . . . ."

10. In addition, the Agreements provided that Defendant would "provide state of the art network connectivity, DNS and IP addresses to connect the Facility to the Internet."

11. The Agreements also obligated Defendant to provide power to its Facilities. In relevant part, each of the Agreements stated as follows:

> [Defendant] shall exclusively provide AC and/or DC power circuits for the Customer Space as specified in the Service Order. [Defendant] will be responsible for monitoring and managing capacity and power draw on any circuit or fuse for the Customer Space. [Defendant] will inform Customer of all scheduled maintenance or repairs which could reasonably be expected to cause interruption to power at least five (5) days prior to the planned maintenance or repairs.

12. To make its Facilities fully operational with Internet connectivity and power so that Bitkern could conduct its business, Defendant guaranteed a minimum amount of "uptime" of Bitkern's hardware (the "Guaranteed Uptime"). In that regard, each of the Agreements stated:

> [Defendant] guarantees a minimum uptime of the Customer Hardware (as shown in the monitoring tool) of 95% per month on the basis for a monthly average ("***Guaranteed Uptime***") calculated on the basis of the generally performing Customer Hardware, which shall exclude deficient or non-working Customer Hardware. Provision of all included services will be to maintain and meet this

> Guaranteed Uptime. Subject to the exclusions in Section 3.3.2, below, [Defendant] will pay the Customer Downtime Compensation for any failure to meet the Guaranteed Uptime.

(Original emphasis).

13. Pursuant to those Agreements, Bitkern delivered its "miners"—that is, the hardware that actually performs the mining—to Defendant's Facility in Maine pursuant to the first two Agreements.

14. Bitkern then executed three Service Orders that specified the hardware delivered, its power needs, and its associated costs.

15. First, on or about August 18, 2022, Bitkern and Defendant entered into a Service Order (the "August 2022 Service Order") that incorporated all of the above-cited provisions. Pursuant to the August 2022 Service Order, Bitkern agreed to provide its hardware to Defendant at 7 Oxford Lane, Oxford, Maine, and Defendant agreed to host same for a monthly payment of $27,000. That payment was based on the estimated power Bitkern would consume. Defendant required a deposit equal to two months of its estimated power consumption—that is, $54,000. Bitkern took this amount as a credit.

16. Second, on or about September 1, 2022, Bitkern and Defendant entered into a second Service Order (the "September 2022 Service Order") that incorporated all of the above-cited provisions. Pursuant to the September 2022 Service Order, Bitkern agreed to provide its hardware to Defendant at 7 Oxford Lane, Oxford, Maine, and Defendant agreed to host same for a monthly payment of $28,080. That payment also was based on Bitkern's estimated power consumption. Bitkern paid Defendant a deposit equal to two months of its estimated power consumption—that is, $52,416.

17. Apparently to achieve cheaper rates for the power necessary to host Bitkern's equipment (and other unrelated companies' equipment), Defendant decided to transfer Bitkern's equipment to a different facility in Kentucky.

18. After the equipment that Bitkern delivered to Defendant pursuant August and September 2022 Services Orders was transferred to Kentucky, Bitkern entered into a third and final Service Order with Defendant dated December 9, 2022 (the "December 2022 Service Order"). That Service Order, like all prior orders, incorporated all of the above-cited provisions.

19. Pursuant to the December 2022 Service Order, Bitkern agreed to provide additional hardware to Defendant at its location in Kentucky, and Defendant agreed to host that equipment. The Service Order does not provide a monthly payment, but it required Bitkern to make a deposit in the amount of $49,467.60 and included a hosting fee of $0.07 per kilowatt of power. Bitkern paid that deposit to Defendant.

20. Eventually, Defendant ceased providing onsite service to Bitkern's hardware miners.

21. As time went on, Defendant failed to pay for the power it was contractually obligated to provide to Bitkern, necessitating Bitkern to advance funds in the amount of $15,000 to Defendant on or about February 16, 2023 to cover those costs.

22. Defendant's failures caused Bitkern damage, including the funds that Bitkern advanced that have never been repaid and the significant downtime caused by Defendant's malfeasance.

23. In a tacit admission of its multiple breaches of its Agreements, Defendants' principle, Bill Stewart, requested a "$100,000 short term credit" to restore energy to the Kentucky location, again, because Defendant apparently could not (or would not) meet its obligations.

24. Rather than extend Defendant additional credit—which none of the Agreements required—Bitkern terminated the Agreements on February 21, 2023. Bitkern then was compelled to send its own representatives to dismantle Bitkern's miners and transfer that equipment to a new facility. Bitkern, moreover, had to deplete its cryptocurrency reserves to pay for the new location.

25. Bitkern has performed all of its obligations under the each and every Agreement outlined above. It has since paid Defendant.

## CLAIMS FOR RELIEF

### COUNT ONE
**(Breach of Contract)**

26. Bitkern repeats and re-alleges each and every fact, assertion and allegation contained in the preceding paragraphs of this Complaint as if they were fully set forth here at length.

27. Bitkern and Defendant entered into binding contracts—the aforementioned Agreements and Service Orders.

28. The parties gave good and valuable consideration for entering the Agreements.

29. Bitkern has performed every aspect of the aforesaid agreement and has not breached the agreement in any respect.

30. Defendant has breached each of the Agreements and Service Orders by, among other things:

   a. Failing to deliver the requisite power to its facilities so that Bitkern could operate its miners;

   b. Failing to render its facility operational within the contractually specified time period;

   c. Requiring Bitkern to advance funds to keep its facilities operational;

    d.  Failing to provide Internet access and network connectivity to Bitkern;

    e.  Failing to abide by the "***Guaranteed Uptimes***" promised in the each of the Agreements;

    f.  Failing to provide the necessary maintenance and support, promised in each of the Agreements; and

    g.  Failing to provide the necessary security as promised in each of the Agreements.

31.    Each of the aforementioned breaches led to significant "downtime" for which Bitkern is entitled to compensation in an amount to be proven at trial.

32.    As a proximate result of the Defendant's breach of the Agreements and Service Orders as aforesaid, the Plaintiff has been damaged in an amount to be proven at trial.

## COUNT TWO
### (Unjust Enrichment)

33.    Bitkern repeats and re-alleges each and every fact, assertion and allegation contained in the preceding paragraphs of this Complaint as if they were fully set forth here at length.

34.    Bitkern pleads this cause of action in the alternative only.

35.    By failing to provide the promised services and retaining deposits totaling $101,883.60, Defendant has been unjustly enriched.

36.    Based on the foregoing the Plaintiff has been damaged in a sum to be determined at trial.

**WHEREFORE** Plaintiff demands judgment as follows:

1.    On Count One, damages in the amount of $158,969.64 plus pre- and post-judgment interest, incidental and consequential damages, costs of suit, and attorney's fees;

    2.       On Count Two, and only in the alternative, payment of $101,883.60, plus pre-and post-judgment interest, costs of suit, and attorney's fees.

    3.       Any such further relief this court deems just and proper.

| | |
|---|---|
| Dated: June 5, 2023 | Respectfully submitted,<br><br>s/ *Stephanie E. Cummings*<br>Stephanie E. Cummings<br>CARMODY TORRANCE SANDAK & HENNESSEY LLP<br>50 Leavenworth Street<br>Waterbury, CT 06702<br>P: 203.575.2649<br>F: 203.575.2600<br>E: scummings@carmodylaw.com<br>-and-<br>John J. Zefutie, Jr. (*pro hac vice forthcoming*)<br>COLELLA ZEFUTIE LLC<br>116 Village Boulevard, Suite 200<br>Princeton, NJ 08540<br>P: 609.551.9771<br>F: 202.920.0894<br>E: jzefutie@czlaw.com |